UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARGARET WYANT,

                        Plaintiff,

      vs                                    1:04-CV-470

UNUMPROVIDENT CORPORATION, and its
Predecessors and Subsidiaries, including
First Unum Life Insurance Company,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

MAYNARD O'CONNOR SMITH &
   CATALINOTTO, LLP                      LAURA A. SPRAGUE, ESQ.
Attorneys for Plaintiff
6 Tower Place
Albany, New York 12203

BOND SCHOENECK & KING, PLLC        STUART F. KLEIN, ESQ.
Attorneys for Defendant                        ARTHUR J. SIEGEL, ESQ.
111 Washington Avenue
Albany, New York 12210-2280

DAVID N. HURD
United States District Judge

## MEMORANDUM DECISION and ORDER

## I. INTRODUCTION

       Margaret Wyant ("Wyant" or "plaintiff") brings this action against First Unum Life

Insurance Company ("First Unum" or "defendant") pursuant to the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, challenging First Unum's denial of

long term disability benefits.[1] Both parties move for summary judgment on the administrative record pursuant to Fed. R. Civ. P. 56 and Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003). Oral argument was heard on February 24, 2006, in Albany, New York. Decision was reserved.

## II. **FACTS**

Wyant is a registered nurse who worked as a Senior Infection Control Practitioner at Ellis Hospital in Schenectady, New York. According to the complaint, she was diagnosed with multiple sclerosis (MS) in 1995. During one flare-up of the disease she had received short-term benefits and returned to work. She claims that at the time she left employment on September 30, 2000, she was suffering another flare-up which continues to date.

Plaintiff's disability insurance policy was provided through her employer and administered by First Unum. The policy assigns discretionary authority to the defendant to determine eligibility for benefits and to interpret the terms and provisions of the plan. (Docket No. 38, Administrative Record ("AR ___"), p. 734.)

The policy provides for short-term disability benefits and then two stages of long-term benefits.[2] The first twenty-four months of long term benefits will be paid if the claimant is "limited from performing the material and substantial duties of [her] regular occupation due to . . . sickness or injury." (AR 517.) "Regular occupation" is defined as follows:

---

[1] The Complaint lists the defendant(s) in this action as "Unum Provident Corporation and its predecessors and subsidiaries, including First Unum Life insurance Company." The parties dispute whether Unum Provident Corporation is a proper party. Considering the resolution of the instant motion it is not necessary to address the issue. For ease of discussion the defendant(s) will be addressed only as First Unum.

[2] The policy also states that "[d]isabilities, due to sickness or injury, which are primarily based on **self-reported symptoms**, and disabilities due to **mental illness** have a limited pay period up to 24 months." (AR 509.) (emphasis in original).

> Regular occupation means the occupation you are routinely performing when your disability begins. UNUM will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

Id. After 24 months long-term benefits will be paid if the claimant is disabled from any gainful occupation. (AR 517.)

After the 180-day elimination period, plaintiff applied for disability benefits in June of 2001. The claim form lists her diagnosis as MS and her disabling symptoms - as of October 2, 2000 - as dizziness, fatigue and balance and coordination problems. (AR 16.) Her treating neurologist, Dr. Neil S. Lava ("Dr. Lava"), listed her limitations as physical activity - no physical labor or operating machinery. Id. She attached a position description of a Senior Infection Control Practitioner and described her duties as follows:

| Duties | Number of Weekly Hours |
|---|---|
| Reviewing patient records | 20 |
| Making rounds to units | 5 |
| Teaching staff | 5 |
| Attending meetings | 5 |
| Preparing reports/outbreaks | 5 |

Id. In support of her claim she submitted her medical records and authorized the release of all medical information to First Unum, which began its evaluation of the claim.

The record contains numerous letters from Dr. Lava, a neurologist at Albany Medical College, to Dr. Burgess, her treating physician, reporting the results of MS follow-up visits. As of July 2000, Wyant was reportedly doing well and a follow-up was planned in six months. (AR 82.) As noted above, she stopped working only a few months later on - September 30, 2000. After a January 2001 visit, Dr. Lava noted her reported symptoms, ordered tests, and scheduled a follow-up visit in three months. (AR 55.) He referred her to an audiologist, a cardiologist, and arranged a consultation regarding her back problems.

After a visit in April, he listed her complaints and noted: "She is clearly unable to work because of her symptoms." (AR 56.) In August 2001, he examined her again and listed her reported symptoms.

On November 30, 2001, First Unum sent Wyant a letter accepting her claim for long-term benefits. (AR 155.) Only days later, on December 3, 2001, defendant sent the file to an in-house vocational consultant, Kenneth W. Martin ("Martin"), for an "occupational clarification." Martin concluded that plaintiff could not return to her previous position but could perform different, sedentary, applications of the RN position. (AR 159.) He listed six such options and stated that based on her educational background she would be qualified for all six. Martin explained: "In his 10/16/01 report her attending physician indicated that she was to avoid walking long distances, climbing stairs and ladders and lifting heavy objects. The nursing applications identified above should fit well within those parameters." Id.

On December 4, 2001, by phone, and on December 13, 2001, by letter, First Unum changed its determination and denied benefits. (AR183.) Wyant sent a letter appealing the claim based on her severe limitations - almost complete immobility - and submitted additional medical information. (AR 190.) This included a report from September 2001 by Dr. Robert D. Sax who concluded that her visual difficulties were "neurologic in source," and that she was "quite disabled when she is trying to do tasks that require visual concentration especially at near." (AR 185.) However, he also stated that she had a visual acuity correctable to 20/25 and did not need to be seen for one year. Id. Dr. Lava submitted a letter attesting to the fact that plaintiff continued to complain of her symptoms and could not do sedentary work, even part-time. (AR 187.)

By letter December 27, 2001, First Unum explained that they reviewed the additional information and determined that the denial would be upheld. (AR 200.) Wyant's audiogram was normal and the cardiologist report was not problematic. (AR 173). Her consultation regarding disc abnormalities resulted in the determination that surgery wasn't recommended. Plaintiff maintained that the determination was made before all her information had been received. (AR 198.) Dr. Lava wrote again stating his previous conclusion. (AR 196.) Dr. Carol Burgess, plaintiff's treating physician, submitted a progress note from a February 28, 2002, visit stating that plaintiff "clearly remains fully disabled since September 2000." (AR 243.)

By letter February 25, 2002, First Unum explained that the submitted information was not sufficient to reverse the prior decision. (AR 256.) It noted that plaintiff had not sought medical treatment between July and December of 2000, and that this was inconsistent with her claim of a flare-up. The policy requires that you must be disabled at the time you stop working and throughout the elimination period (September 30, 2000 through March 30, 2001) to qualify for benefits and, whatever her later symptoms, she had not demonstrated that she was disabled during that time. (AR 253-56.) Wyant insisted that her file be reviewed again, it was, and the denial was upheld by letter April 24, 2002. (AR 411.)

Wyant retained counsel in the fall of 2002. Additional medical records were obtained which documented treatment in the fall of 2000 when she ended her employment. (AR 417-36.) By letter dated January 29, 2003, counsel pointed out that First Unum's basis for denial was not viable considering the newly submitted records. Defendant considered the claim again. It received: (1) another letter from Dr. Burgess attesting to plaintiff's inability to work due to physical conditions, but also due to her diminished cognitive capacities; (2) a

report by Dr. Maria Lifrak ("Dr. Lifrak") who had conducted neuropsychometric testing in February 2002; and (3) documents regarding plaintiff's initial diagnosis of MS. (AR 445, 459.)

Dr. Daniel Krell ("Dr. Krell"), a First Unum physician consultant, reviewed the file on April 16, 2003. (AR 460-64.) He concluded that the MS test results were not consistent with MS and that eight years after a MS diagnosis, they should be. He recommended a review of the neuropsychological consultation. Dr. Jana Zimmerman, a clinical neuropsychologist employed by defendant, reviewed Dr. Lifrak's testing and findings. (AR 465-67.) Dr. Zimmerman opined that the neuropsychological testing did not substantiate cognitive dysfunction, in part, because cogitive functioning should not be within the range of expectation in a person with MS reporting dysfunction over seven years. Id. at 465. Dr. Zimmerman also concluded that the testing revealed inconsistencies and symptom embellishment thus, self reporting would not be relied on. Id.

By letter October 7, 2003, First Unum notified Wyant that upon completion of a third review it was upholding the denial of benefits. (AR 480-82.) It explained that in July 2000 plaintiff was doing well, but by October she reported debilitating MS-related symptoms, and yet her physcan only limited her from physical labor and operating machinery. A year later, in October 2001, Dr. Lava listed her limitations only as restrictions from walking long distances, climbing stairs or lifting heavy objects. Dr. Krell opined that the MS testing was not conclusive because the neurological testing failed to document significant findings. Dr. Lifrak had opined that the testing did not substantiate cognitive dysfunction and revealed inconsistencies and symptom embellishment which undermined plaintiff's self-reporting.

First Unum explained that there is an "absence of clinical documentation of an active pathology reasonably likely to result in restrictions and limitations severe enough to preclude work capacity." (AR 480.) Therefore, defendant concluded that there is insufficient evidence of disability during the elimination period and benefits continued to be denied. Id. Plaintiff seeks the first twenty-four months of long-term benefits, a direction that defendant consider the next stage of benefits, pre-judgment interest, and attorney's fees.

## III. DISCUSSION

### A. Standard of Review under ERISA

ERISA is silent as to the standard of review to be applied to administrators' benefit determinations. Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 145 (2d Cir. 2003). The Supreme Court, however, has held that challenges to denials of benefits are "to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101,115 (1989). Here, the policy explicitly assigns discretionary authority to First Unum to determine eligibility for benefits and to interpret the terms and provisions of the plan. (AR 734.)

"Where a written plan confers upon an administrator the discretionary authority to determine eligibility, a court must view its decisions with a 'strong measure of deference' and may reverse only if the administrator's ultimate conclusions are 'arbitrary and capricious.'" Armstrong v. Liberty Mut. Life Assur. Co., 273 F. Supp. 2d 395, 402 (S.D.N.Y. 2003) (quoting

Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995)).  The arbitrary and capricious standard applies in the instant case.[3]

"Because review in this context is limited to the record before the administrator at the time of decision, however, 'the district court sits in effect an as appellate court to determine whether the denial of ERISA benefits was arbitrary and capricious.'" Henar v. First Unum Life Ins. Co., No. 02-CV-1570, 2002 U.S. Dist. LEXIS 17585, 13-14 (S.D.N.Y. Sept. 19, 2002) (quoting Rizk v. Long Term Disability Plan of the Dun & Bradstreet Corp., 862 F. Supp. 783, 791 (E.D.N.Y. 1994).

A decision or interpretation is arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan, 52 F.3d at 442.  The administrator's decision is reviewed to determine whether it "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Armstrong, 273 F. Supp. 2d at 403 (citing Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995)).  "'Substantial evidence' is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker and] requires more than a scintilla but less than a preponderance.'" Id. (citing Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995)).

---

[3] Plaintiff argues that there is a conflict of interest that mitigates against the deferential standard of review - First Unum makes both the claim determination and payments on the policy.  Plaintiff acknowledges that the conflict itself is insufficient to trigger a different standard of review but requests consideration of certain defendant conduct when determining whether defendant abused its discretion. Plaintiff argues that the defendant effectively grafted additional requirements onto the policy when it made its determination.  This argument is based on the defendants use of the word "application" of the defined occupation.  The argument boils down to semantics.  The defendant expert evaluated plaintiff's occupation in accordance with the policy and considered plaintiff's medical condition in relation to it.  There is no showing of conflict that would justify any deviation from the usual arbitrary and capricious standard of review.  See Pulvers v. First Unum Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000).

- 8 -

### C. Denial of Benefits

As noted above, both parties move for judgment on the administrative record. The arguments in favor of, and in opposition to, the separate motions are duplicative and overlapping, thus, the motions will be considered together.

First Unum asserts that the burden was on plaintiff to demonstrate the severity of her condition, and the record demonstrates that plaintiff was unable to prove an inability to perform the duties of her occupation. Barnable v. First Fortis Life Ins. Co., 44 F. Supp. 2d 196, 204 (E.D.N.Y. 1999) (noting plaintiff's burden). Defendant acknowledges plaintiff's symptoms, but in reliance on its medical and vocational experts, maintains that the restrictions listed by her physicians do not preclude sedentary work in her occupation.[4]

#### 1. Subjective Complaints

Wyant's primary argument that First Unum's determination was arbitrary and capricious is made on grounds that it failed to credit her subjective complaints. Indeed, when believed, subjective evidence or self-reported symptoms may be relied on in support of disability claims. See Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127 (2d Cir. 2001); Chan v. Hartford Life Ins. Co., 2004 WL 2002988, *9 (S.D.N.Y. Sept. 8, 2004). At the same time, the defendant is not obligated to credit them. Couture v. UNUM Provident Corp., 315 F. Supp. 2d 418, 432 (S.D.N.Y. 2004).

First Unum credited plaintiff's complaints, but not their severity. She had suffered, and worked with, symptoms believed to be related to a diagnosis of MS for many years.

---

[4] In addition to the grounds discussed below, plaintiff argues that the final denial letter, which challenges her MS diagnosis, states a new ground for denial which she has not had the opportunity to address. First Unum's determination has addressed plaintiff's physical complaints of MS and their effect on her work capacity. The 775-page record constitutes a sufficient opportunity to respond to defendant's view of her symptoms.

Defendant required some evidence of an increase in severity that would support the conclusion that there had been a change which would render her disabled. Absent objective test results to that effect, defendant was required to consider the credibility of plaintiff's self-reporting of symptoms. It did not credit her complaints, at least in part, because Dr. Zimmerman had opined that the neurological testing revealed inconsistencies and symptom embellishment which undermined plaintiff's self-reporting.

First Unum also considered the reports of Dr. Lava - though it was not obliged to accord special deference to the opinion because he is a treating physician. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003). In this case, Dr. Lava regularly documented plaintiff's reporting of symptoms, and concluded that plaintiff was disabled by them. However, the limitations he listed during the relevant time period were physical limitations that could be accommodated in her sedentary position. Likewise - in recognizing symptoms but not the reported severity - Dr. Sax confirmed plaintiff's visual difficulties, but those difficulties were not severe enough to warrant a return appointment in less than a year.

First Unum's interpretation of the record in this regard was not arbitrary and capricious as the weighing of the evidence was not without reason, without support, or clearly erroneous. The plaintiff's reasonable alternative interpretations are not sufficient to disturb defendant's determination. The review of the determination is narrow and not a consideration of the issue of eligibility anew. Maniatty v. Unumprovident Corp., 218 F.Supp.2d 500, 502 -503 (S.D.N.Y. 2002) (quoting Pagan, 52 F.3d at 442).

### 2. Definition of "Regular Occupation"

Wyant complains that First Unum abused its discretion in altering the definition of "regular occupation" to include numerous applications of the nursing occupation. She argues

that the occupation at issue is her "actual job." Plaintiff's arguments are of no avail. Again, the policy is clear and unambiguous as to how the term is defined.

> Regular occupation means the occupation you are routinely performing when your disability begins. UNUM will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

(Ar 517.) First Unum's reliance on vocational consultant Martin's evaluation in interpreting the term "regular occupation" was not arbitrary and capricious, but rather, consistent with the terms of the policy and her position description.

### 3. **Overlooked Factor - Cognitve Capacity**

Wyant argues that First Unum abused its discretion in ignoring the mental aspects of her disability claim. The case law plaintiff cites for this proposition is not persuasive here. In Henar v. First Unum Life Ins. Co., the court rejected the administrator's determination because the administrative record did not reflect that administrator's experts adequately considered anything other than plaintiff's ability to deal with the physical aspects of his employment. No. 02-CV-1570, 2002 U.S. Dist. LEXIS 17585, at *18 (S.D.N.Y. September 19, 2002.). In Shutts v. First Unum Life Ins. Co. of Am., the court found that the administrator failed to investigate and consider a number of relevant factors in arriving at its determination that the plaintiff was not in "active employment." 310 F. Supp. 2d 489, 500 (N.D.N.Y. 2004).

Here, First Unum did consider and address plaintiff's complaints of cognitive difficulties. Upon the recommendation of Dr. Krell, Dr. Zimmerman reviewed the neuropsychometric testing conducted by plaintiff's expert Dr. Lifrak. Dr. Zimmerman concluded that "[t]here was no evidence that restrictions or limitations were necessary from a

```
```

neurocognitive perspective. There was insufficient evidence that restrictions or limitations were necessary from a psychological perspective." (AR 465.) Disagreement with the weight given Dr. Zimmerman's testimony does not render the determination arbitrary and capricious. The defendant considered the effect of her cognitive difficulties and there is no clear error of judgment which would support disturbing the defendant's determination.

## IV. **CONCLUSION**

First Unum's failure to credit the severity of plaintiff's subjective complaints does not constitute an abuse of discretion. Defendant's consideration of her regular occupation was in accordance with the terms of the policy. Defendant did not overlook plaintiff's assertions of cognitive problems. The defendant's decision to deny benefits to the plaintiff was not arbitrary and capricious. The complaint must be dismissed.

Therefore, it is

ORDERED that

1. Plaintiff Margaret Wyant's motion for judgment on the administrative record is DENIED;

2. Defendant First Unum Life Insurance Company's motion for judgment on the administrative record is GRANTED; and

3. The complaint is DISMISSED.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated:   May 16, 2006
         Utica, New York.